## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALEXANDER MURASHKO, | ) | Civil Action No: |
| | ) | 17-cv-2533 (PGS)(TJB) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| N. ROBERT HAMMER, *et al.*, | ) | **AND** |
| | ) | **ORDER** |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

This shareholder derivative complaint arises from allegations that Commvault Systems, Inc. (hereinafter, "Commvault") and its former board of directors and executive officers breached their fiduciary duties by fraudulently misrepresenting the corporation's financial status and engaging in a "cookie jar accounting" scheme. Presently, Defendants N. Robert Hammer, Alan G. Bunte, Brian Carolan, Frank J. Fanzilli, Jr., Armando Geday, Keith B. Geeslin, Robert F. Kurimsky, Louis F. Miceli, Gary Merrill, Ronald L. Miiller, Daniel J. Pulver, Gary B. smith, and David F. Walker (collectively, "Director Defendants") seek dismissal of Plaintiff Alexander Murashko's amended shareholder derivative complaint (ECF No. 20) pursuant Federal Rule of Civil Procedure 23.1 for failure to plead particularized facts showing that a demand on the Commvault Board of Directors would have been futile. (ECF No. 21). For the reasons discussed below, the motion is granted without prejudice.

## BACKGROUND

Commvault is a publicly traded data protection and information management software company that is incorporated in Delaware and headquartered in New Jersey. (Amended Complaint at ¶¶ 3, 25). Commvault has a ten-member board of directors, of which two, Defendants Hammer

1

and Bunte, are inside directors. Of the eight outside directors, Defendants Kurimsky, Pulver and Walker served on the Audit Committee, and Defendants Kurimsky, Pulver, Smith, and Walker on the Governance Committee. (*Id.* at ¶¶ 42-43). Under the terms of its corporate charter, Commvault exempts directors from liability for monetary damages, "[t]o the fullest extent permitted by the General Corporation law of the State of Delaware." (ECF No. 21-6, "Corporate Charter").[1]

In December 2003, Commvault entered a business partnership with Dell, wherein Dell served as Commvault's reseller and original equipment manufacturing partner. (Amended Complaint at ¶ 4). After going public in 2006, Commvault's revenue quadrupled in value from $109,472,000 in 2007 to $406,639,000 in 2012. (*Id.* at ¶ 5). Of this, Dell accounted for twenty percent of Commvault's total revenue. (*Id.*). Over the next few years, Commvault predicted that its revenue would grow from $500 million in 2013 to over $1 billion. (*Id.* at ¶ 6). To meet this goal, analysts predicted that Commvault would "have to grow by at least 20% year-over-year until fiscal [year] 2017." (*Id.*). However, in 2012, Dell acquired certain Commvault competitors and ended its partnership with Commvault; this termination would severely affect Commvault's ability to achieve its revenue targets. (*Id.* at ¶ 7). Plaintiff claims Defendants falsely reassured investors that Commvault was replacing Dell with business partners, and that the lost partnership would not affect Commvault's revenue target numbers. (*Id.* at ¶ 8).

On May 14, 2013, Commvault filed its annual Form 10-K for fiscal year 2013, as required pursuant Section 13 of the Securities Exchange Act of 1934. (ECF No. 21-4, "FY 2013 10-K").[2]

---

[1] Commvault's corporate charter is properly before the Court since both parties explicitly reference the document in their moving briefs. Moreover, the Court can take judicial notice of the corporate charter. *See In re Baxter Int'l*, 654 A.2d 1268, 1270 (Del. Ch. 1995) ("The court may take judicial notice of the certificate [of incorporation] in deciding a motion to dismiss.").

[2] Because these forms are regularly filed with the SEC, "Courts often take judicial notice of such filings," since these documents "can be accurately and readily determined from sources whose

In their Form 10-K, Commvault reported deferred software revenue of $9,193,000, which was approximately $6 million more than the $3,764,000 reported in 2012. (Amended Complaint at ¶ 72). Plaintiff claims that the statements in the Form 10-K "were materially false and misleading" because a material portion of the $9.2 million reported as deferred software revenue should have been reported as realized revenue for the fourth quarter, but "was being saved to mask Commvault's undisclosed declining growth prospects." (*Id.* at ¶ 77).

According to the Complaint, Defendants created a "cookie jar" accounting scheme, wherein Defendants concealed Commvault's declining revenue and manipulated Commvault's finances, in violation of the Generally Accepted Accounting Principles (GAAP). (*Id.* at ¶ 9). Specifically, Plaintiff claims that Defendants did not recognize revenue earned in prior fiscal periods and, instead, deferred these earnings to later periods to show financial growth. For instance, during the second and third fiscal quarters of 2014, Plaintiff claims that "[D]efendants caused the Company to recognize a material portion of its artificially inflated deferred software revenue balance to create the illusion that Commvault was meeting its 20% year-over-year growth targets." (*Id.* at ¶ 10). In both quarters, Commvault recognized more than $4 million in previously deferred software revenue, which misrepresented Commvault's true revenue numbers. (*Id.* at ¶¶ 11-12).

However, Commvault's financial struggles became public on April 25, 2014, when it announced that its fourth quarter profits had declined by 7.8% and that software revenue had dropped to 10% year-over-year, half of the 20% figure that analysts expected. (*Id.* at ¶ 16). Once

accuracy cannot reasonably be questioned." *In re Polycom, Inc.*, 78 F. Supp.3d 1006, 1011 n.3 (N.D. Ca. 2015) (quoting Fed. R. Evid. 201(b)).

these disclosures were made public, Commvault experienced a 30% drop in stock value, falling from $68.58 per share to $47.56. (*Id.*).[3]

Plaintiff now brings this present cause of action on behalf of Commvault, against Director Defendants, alleging two counts of breach of fiduciary duties, one count of unjust enrichment, and one count of insider trading. The Complaint identifies the following individual defendants and their corporate capacities:

N. Robert Hammer, President and Chief Executive Officer of Commvault. (Complaint at ¶ 27);

Alan G. Bunte, Exececutive Vice President and Chief Operating Officer. (*Id.* at ¶ 28);

Brian Carolan, Chief Financial Officer. (*Id.* at ¶ 29);

Ronald L. Miiller, senior vice president of worldwide sales. (*Id.* at ¶ 30);

Gary Merrill, vice President, finance and chief accounting officer. (*Id.* at ¶ 31);

Frank J. Fanzilli, Jr., director. (*Id.* at ¶ 32);

Armando Geday, director. (*Id.* at ¶ 33);

Keith B. Geeslin, director. (*Id.* at ¶ 34);

Robert F. Kurimsky, director and audit committee member. (*Id.* at ¶ 35);

Daniel J. Pulver, director and audit committee member. (*Id.* at ¶ 36);

Gary B. Smith, director. (*Id.* at ¶ 37);

---

[3]     This purported misrepresentation became the basis of a securities class action filed against Commvault on September 10, 2014. *See In re CommVault Sys., Sec. Litig.*, No 14-5628, 2016 U.S. Dist. LEXIS 135257 (D.N.J. Sept. 30, 2016). In that case, the plaintiffs alleged that Defendants Hammer and Carolan made false and misleading statements about Commvault's financial growth and downplayed the significance of losing Dell's partnership. *Id.* at *2-13. In denying Defendant's motion to dismiss the plaintiff's second amended complaint, this Court concluded, "the allegations regarding the loss of Dell, juxtaposed with Defendants' representations to the investing public that they had replaced Dell's business, are sufficient to make out a claim that Defendants made false or materially misleading statements." *Id.* at *25.

David F. Walker, director and chair of audit committee. (*Id.* at ¶ 38).

In seeking to establish demand futility, Plaintiff claims that Hammer and Bunte, as Commvault's officers, face "a substantial likelihood of liability for issuing false and misleading statements" and engaging in insider trading. (*Id.* at ¶¶ 129-38). As for the seven outside directors, Plaintiff claims they "face a substantial likelihood of liability" based on their positions on the Audit or Governance Committees and for signing and approving Commvault's Fiscal Year 2013 10-K, which Plaintiff claims understated Commvault's revenue "to mask CommVault's undisclosed declining growth prospects." (*Id.* at ¶¶ 139-51). Defendants seek dismissal of Plaintiff's Complaint based on his failure to adequately plead sufficient facts to support demand futility.

## LEGAL STANDARD

"[A] shareholder derivative claim is one in which a shareholder asserts a claim belonging to the corporation." *In re Prudential Ins. Co. Litig.*, 659 A.2d 961, 970 (N.J. Super. Ct. Ch. Div. 1995). "A shareholder derivative action is an exception to the principle of corporate governance that 'the decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and consequently is the responsibility of the directors.'" *Perkins v. Daniel*, No. 06-1518, 2007 U.S. Dist. LEXIS 90104, at *5 (D.N.J. Dec. 6, 2007) (quoting *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992)). Because these actions interfere with director autonomy, "[s]hareholder derivative suits typically require plaintiffs to make pre-suit demand on the board of directors that the board bring suit on behalf of the corporation." *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, 493 F.3d 393, 399 (3d Cir. 2007).

Under Federal Rule of Civil Procedure 23.1, "a shareholder may file a derivative suit against the board of directors to claim enforcement of a right of the corporation where the

corporation has failed to assert that right." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

Rule 23.1 sets forth a heightened pleading standard, requiring "a plaintiff to plead with particularity either the efforts made to spur directors to take the action sought, and why these efforts were unsuccessful, or the reasons why no effort was made to demand action from the board." *Id.* "The purpose of Rule 23.1's demand requirement is to 'affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" *Id.* (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991)).

"As a federal court hearing a shareholders' derivative suit involving state law claims, a district court must apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused." *In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545, 555 (D.N.J. 2011) (internal quotation marks and citation omitted). Here, both parties agree that Delaware law governs this matter. Under Delaware law, there are two relevant tests for determining demand futility. First, the Court employs the test set forth in *Aronson v. Lewis*, 473 A.2d 805, 809 (Del. 1984), when the plaintiff challenges a board decision. Under this test, the court must consider whether the Complaint pleads sufficient facts that "a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990) (quoting *Aronson*, 473 A.2d at 814). "A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). As such, where the complaint demonstrates that a majority of the directors have a personal stake in a transaction or proposed

litigation, such that they would be unable to make a proper business judgment, the plaintiff has sufficiently pleaded demand futility. *Aronson*, 473 A.2d at 814.

However, when the subject of a derivative suit is not predicated on a business decision, but on a violation of the board's oversight duties, the court applies a second test, as set forth in *Rales*. *See Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). Under *Rales*, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934. If the plaintiff meets this burden, "then demand will be excused as futile." *Id.*

## ANALYSIS

### I. Breach of Fiduciary Duty Claims

Defendants first seek dismissal of Counts I and II of Plaintiff's Complaint, since he has failed to establish demand futility. Under Count I, Plaintiff claims Defendants breached their fiduciary duties of loyalty and good faith by disseminating "materially misleading and inaccurate information." (Amended Complaint at ¶ 153). Under Count II, Plaintiff alleges that Individual Defendants breached this fiduciary duty by failing to ensure that Commvault's financial statements were consistent with GAAP, which he describes as "cookie jar accounting," and failing to correct "the known and pervasive problems with CommVault's internal controls and practices and procedures." (*Id.* at ¶¶ 156-57). According to Plaintiff, because the directors faced "a substantial risk of personal liability," there is "reasonable doubt" that it could have properly exercised its business judgment.

Under Section 102(b)(7) of the Delaware General Corporation Law, corporations can adopt charter provisions that eliminate or limit "the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty," subject to certain exceptions. Del. Code Ann. tit. 8, § 102(b)(7). Where, as here, the directors are exculpated from liability for certain conduct, the plaintiff has the burden of pleading a "*non-exculpated* claim against the directors based on particularized facts." *Wood*, 953 A.2d at 141 (internal quotation marks and citation omitted). Specifically, under Delaware General Corporation Law, directors can be liable for: (1) "breach of the director's duty of loyalty to the corporation or its stockholders; (2) "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law"; (3) unlawful payment of dividend or unlawful stock purchase ore redemption of stock, Del. Code Ann. tit. 8, § 174; and (4) "any transaction from which the director derived an improper personal benefit." Del. Code Ann. tit. 8, § 102(b)(7). Since Plaintiff does not claim that the directors engaged in self-dealing, he must establish that they breached their duty of loyalty, acted in bad faith, or otherwise engaged in knowing or intentional misconduct. *See Wood*, 953 A.2d at 141. In doing so, Plaintiff "must also plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper." *Id.*[4] (citations omitted); *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007) ("director liability for failure to monitor require[s] a finding that the directors acted with the state of mind traditionally used to define the mindset of a disloyal director - bad faith").

---

[4] The Court is not persuaded by Plaintiff's contention that because scienter is not a necessary element to a breach of fiduciary claim, he is not subject to the scienter-based standard. It has been well established in Delaware law that when a plaintiff, as is the case here, seeks to hold directors liable for failure to monitor, he must meet the scienter-based standard. *See Wood*, 953 A.2d at 141; *Desimone*, 924 A.2d 935.

Neither party disputes that, given their executive positions and employment with Commvault, Hammer and Bunte are not independent directors. As such, in order to allege demand futility, Plaintiff must demonstrate that at least three of the outside directors faced a substantial likelihood of liability, such that they could not exercise their independent and disinterested business judgment in responding to a shareholder's demand. *See Rales*, 634 A.2d at 934. Here, Plaintiff contends that since both the Audit and Governance Committees breached their fiduciary duties, they face a substantial likelihood of liability. The Court addresses each Committee's potential liability in turn.

*1. Audit Committee Defendants*

Plaintiff claims that Defendants Kurimsky, Pulver, and Walker, as members of the Audit Committee, "face a substantial likelihood of liability" because the Audit Committee issued false and misleading statements to the SEC and others, and failed to "maintain internal controls" to prevent revenue manipulation. (Plaintiff's Brief at 24).

Turning first to the misleading statements, Plaintiff claims that the Audit Committee was tasked with ensuring "the integrity of the financial statements of the Company" and "compliance with legal and regulatory requirements." (Amended Complaint at ¶ 48). However, by failing to correct or report the alleged revenue manipulation that was represented in the FY 2013 10-K, Plaintiff claims that Defendants Kurimsky, Pulver, and Walker, breached their fiduciary duties to Commvault. This assertion is insufficient.

"[T]o establish a threat of director liability based on a disclosure violation, plaintiffs must plead facts that show that the violation was made knowingly or in bad faith, a showing that requires allegations regarding what the directors knew and when." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 133-34 (Del. Ch. 2009). However, it is well-settled that membership, alone,

on an Audit Committee is an insufficient basis for inferring scienter. *See Wood*, 953 A.2d at 142 (rejecting the argument that "membership on the Audit Committee is a sufficient basis to infer the requisite scienter"); *see also Rattner v. Bidzos*, No. 19700, 2003 Del. Ch. LEXIS 103, at *44-48 (Del. Ch. Sept. 30, 2003) (same). In *Wood*, the Delaware Supreme Court refused to find audit committee board members liable for alleged false statements, where the plaintiff failed to identify any "red flags" that would suggest failure to exercise oversight. *Id.* at 143-44 ("Under Delaware law, red flags 'are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer.'" (citation omitted)).

Here, too, Plaintiff fails to identify any "red flags" that would allow this Court to infer that Defendants breached their fiduciary duties. Instead, Plaintiff simply asserts that Defendants *should have known* of the impropriety of these statements; however, such assertions do not meet Plaintiff's heightened pleading burden. *See Guttman v. Huang*, 823 A.2d 492, 498 (Del. Ch. 2003) (dismissing the plaintiff's complaint since it was "entirely devoid of particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties"). The Complaint does not allege what the Audit Committee members knew or did not know, as such, it lacks a reasonable basis to infer that Defendants acted in bad faith. *See In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1017 (N.D. Ca. 2015) (applying Delaware law).

Alternatively, Plaintiff contends that the Audit Committee Defendants are liable for failing to maintain adequate internal control of Commvault revenue reporting. According to Plaintiff, the Audit Committee Defendants should have noticed that the reported revenue was an attempt "to mask Commvault's undisclosed declining growth prospects." (Plaintiff's Brief at 27). As such, they face a substantial likelihood of personal liability for failing to maintain adequate internal controls. The Court disagrees.

Failure to monitor, or oversee corporate operations, "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). In order to demonstrate director oversight liability, a plaintiff must establish: "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). "Plaintiffs must plead particularized facts demonstrating that 'the directors *knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities such as by failing to act in the face of a known duty to act.'" *In re Polycom*, 78 F. Supp. 3d at 1015 (quoting *Citigroup*, 964 A.2d at 123 (emphasis in original)).

Plaintiff acknowledges that internal controls were in place. The Complaint identifies the existence of an Audit Committee, a Governance Committee, and a Board of a Code of Business Ethics and Conduct. (Amended Complaint at ¶¶ 49-51). Specifically, the Ethics Code states, "We maintain systems of controls and procedures designed to assure the completeness and accuracy of financial and other records. . . . We will not tolerate false or artificial entries in the Company's books and records or arrangements that may result in such entries." (*Id.* at ¶ 51). "[I]n corporate law, independent directors are entitled to rely in good faith on advice from the auditors that corporate books and records are accurate and GAAP-compliant and that corporate internal controls are adequate." *Am. Int'l Grp. v. Greenberg*, 965 A.2d 763, 781 n.246 (Del. Ch. 2009) (citing Del. Code Ann. tit. 8 § 141(e)). Here, the record reflects that Commvault availed itself to the services of an outside auditor, to perform an independent audit of its FY 2013 financial statements. (FY 2013 10-K at 58). In a report prepared by public accounting firm Ernst & Young, it concluded:

> In our opinion, the financial statements . . . present fairly, in all material respects, the consolidated financial position of CommVault Systems, Inc. at March 31, 2013 and 2012, and the consolidated results of its operations and its cash flows for each of the three years in the period ended March 31, 2013, in conformity with U.S. generally accepted accounting principles. Also in our opinion, the related financial statement schedule, when considered in relation to the basic financial statements taken as a whole, presents fairly in all material respects in the information set forth therein.

(*Id.*). This statement undercuts Plaintiff's assertion that Commvault engaged in fraudulent bookkeeping, as it demonstrates the Audit Committee's efforts to assure the accuracy of Commvault's financial statements.

Because such internal controls were in place, Plaintiff has the burden of demonstrating that Defendants, in bad faith, "consciously failed to monitor or oversee its operations." *Ritter*, 911 A.2d at 370; *see also In re Polycom*, 78 F. Supp. 3d at 1015. Plaintiff has plainly failed to meet this burden. Like his misrepresentation claims, Plaintiff's oversight claims fail to adequately plead that the Audit Committee Defendants were aware of the manipulation of Commvault's financial statements or consciously disregarded its responsibilities. Instead, Plaintiff argues, "the Audit Committee should have known or was negligent in not knowing, that the Company was engaged in improper revenue manipulation" and are liable for having signed the FY 2013 10k. (Plaintiff's Brief at 29). However, this, in and of itself, does not suffice to satisfy the heightened scienter-based standard. *See Wood*, 953 A.2d at 142 ("The Board's execution of [the company's] financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality."). Although Plaintiff claims that $6 million in deferred funds was higher than the prior five fiscal years, he fails to demonstrate how this potentially constituted a "red flag" or how this illustrated a conscious oversight by the Audit Committee. Simply put, Plaintiff does not identify a single instance wherein the Audit Committee disregarded a potential "red flag" or ignored its responsibilities. As such, since the Complaint fails to plead particularized

12

facts demonstrating that the Audit Committee members breached their fiduciary duties, demand is not excused. *See In re Polycom*, 78 F. Supp. 3d at 1016 (dismissing the plaintiffs' oversight claims, where they generally alleged that the board "should have known that violations of the law were occurring," but failed to demonstrate that the board was aware of the alleged problems with the CEO's expense reports).

*2. Governance Committee Defendants*

Plaintiff next claims that demand is excused because the Governance Committee, which includes Kurimsky, Pulver, Smith, and Walker, failed to act upon Hammer and Bunte's alleged insider trading. (Amended Complaint at ¶ 146).

Relying on this Court's decision in *In re CommVault Sys., Sec. Litig.*, 2016 U.S. Dist. LEXIS 135257, Plaintiff contends that there is a sufficient basis for determining that the Governance Committee Defendants breached their fiduciary duty. Specifically, Plaintiff argues, "there has been no disclosure or indication that the Governance Committee has investigated Hammer or Bunte's illicit sales." (Plaintiff's Brief at 36). However, this argument is unavailing since Plaintiff fails to plead with any degree of particularity facts that demonstrate the Governance Committee's awareness of Hammer and Bunte's purported misconduct or their willful disregard thereof. *See, e.g., In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 125 ("A plaintiff can show bad faith conduct by, for example, properly alleging particularized facts that show that a director *consciously* disregarded an obligation to be reasonably informed about the business and its risks or *consciously* disregarded the duty to monitor and oversee the business").

Plaintiff also relies on *In re Countrywide Financial Corp. Derivative Litigation*, 554 F. Supp. 2d 1044, 1063-64 (C.D. Cal. 2008) for the proposition that demand was futile since the Governance Committee failed to take any action against Hammer and Bunte. In *Countrywide*, the

court excused demand where the plaintiff identified "red flags of such prominence that Individual Defendants must necessarily have examined and considered them in the course of their Committee oversight duties." *Id.* at 1060. The defendants in *Countrywide* were board committee members responsible with overseeing the corporation's "risk exposures, investment portfolio, and loan loss reserves." *Id.* at 1062. However, since one of the "red flags" involved "increasing delinquencies in Countrywide's riskiest loans," which "implicated underwriting practices at the core of Countrywide's business model," the court concluded that the plaintiffs pleaded sufficient facts to infer scienter. *See id.* at 1060, 1064-65.

Here, Plaintiff fails to plead any particularized facts for which the Court could reasonably conclude that the Governance Committee would have known of the "red flags" and, nevertheless, failed to take proper action. *See In re Am. Int'l Group, Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 437-38 (S.D.N.Y. 2010) (distinguishing *Countrywide*, where the plaintiff did not plead any particularized facts that the defendants, "in the course of carrying out their responsibilities as Board members generally or as Board committee members particularly, would have become aware of any 'red flags' demonstrating serious risks at the core of AIG's business"). Unlike *Countrywide*, Plaintiff does not allege that the Governance Committee, all of whom are outside directors, played a central role in Commvault's business operations. The sole basis for Plaintiff's argument is that this Court in *In re CommVault Systems* denied the defendant's motion to dismiss the plaintiff's securities fraud claims. However, as discussed above, this "red flag" fails to rise to the level of "such prominence" that the Court can infer scienter. *See, e.g., Countrywide*, 554 F. Supp. 2d at 1058-65 (summarizing the extent and significance of the "red flags" present in Countrywide's operations).

As such, the demand requirement will also not be excused based on Plaintiff's Governance Committee Claims.

## II. Unjust Enrichment Claim

Defendants next seek dismissal of Count III of Plaintiff's Amended Derivative Complaint, which alleges a claim of unjust enrichment. Specifically, Plaintiff claims, "[b]y their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of CommVault." ("Amended Complaint" at ¶ 160).

Under Delaware law, "[u]njust enrichment is defined as the 'unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (citation omitted). To sustain a claim of unjust enrichment, the plaintiff must establish: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

Here, Plaintiff's claim is devoid of any allegations that Defendants benefited in any way from the purportedly unlawful conduct. As discussed above, Plaintiff has failed to plead particularized facts that the Defendants could not have made an independent and disinterested business judgment in response to a demand that the company pursue unjust enrichment claims. As such, demand for Plaintiff's unjust enrichment claim is not excused. *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 341-42 (S.D.N.Y 2010) (dismissing the derivative plaintiffs' unjust enrichment claim, where they failed to allege that the directors benefited from the unlawful conduct or that they were incapable of "exercis[ing] their disinterested and independent business judgment in considering a demand to file suit").

III. Insider Trading

Finally, Defendants seek dismissal of Count IV of Plaintiff's Amended Derivative Complaint, which alleges insider trading claims against Hammer and Bunte, since he has failed to demonstrate that demand would be futile.

In determining whether demand is excused with respect to insider trading, a plaintiff must plead sufficient facts that create a reasonable doubt that a majority of the directors "are incapable of exercising their disinterested business judgment in considering" a demand to pursue claims of insider trading. *Rattner*, 2003 Del. Ch. LEXIS 103, at *33. "[P]articularized allegations which, if true, give rise to a 'substantial likelihood' of personal liability are necessary to raise a reasonable doubt with respect to a director's disinterestedness." *In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 389 (S.D.N.Y. 2006) (citing *Rales*, 634 A.2d at 936). Here, the Court must determine "whether the plaintiffs have pled particularized facts regarding the directors that create a sufficient likelihood of personal liability because they have engaged in material trading activity at a time when (one can infer from particularized pled facts that) they knew material, non-public information about the company's financial condition." *Guttman*, 823 A.2d at 502.

Here, again, Plaintiff has failed to meet this burden. First, although Commvault is comprised of ten directors, Plaintiff only alleges that two, Hammer and Bunte, have engaged in insider trading. As such, Plaintiff has failed to demonstrate that a majority of the board was incapable of making an independent and disinterested business judgment. *See In re First Bancorp Derivative Litig.*, 465 F. Supp. 2d 112, 121 (D.P.R. 2006) ("Because a majority of the directors are not alleged to have engaged in insider trading, the court finds that plaintiffs' insider trading allegations do not raise a reasonable doubt that the Board is incapable of being impartial in considering a demand to challenge the insider-trading transactions."). Second, the fact that

16

Defendants have not pursued claims against Hammer and Bunte does not demonstrate their interest in the matter or demand futility. *Richardson v. Graves*, No. 6617, 1983 Del. Ch. LEXIS 466, at *9 (Del. Ch. June 17, 1983) ("The mere fact that [the board members] have not elected to sue before the derivative action was filed should not of itself indicate 'interestedness.'"). In short, Plaintiff has failed to plead any particularized facts that demonstrate that the Defendants were incapable of exercising independent judgment in considering a demand for insider trading; as such, the demand requirement as to Plaintiff's insider trading claims is not excused.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this ____ day of ____, 2018,

**ORDERED** that Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED** without prejudice.

_____
PETER G. SHERIDAN, U.S.D.J.